# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 08/27/2020 12:35 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk

Case 2:21-cv-03694-JAK-SK   Document 1-1   Filed 04/30/21   Page 2 of 42   Page ID #:6

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Ruth Ann Kwan

Ari E. Moss (SBN 238579)
MOSS BOLLINGER, LLP
15300 Ventura Blvd., Suite 207
Sherman Oaks, CA 91403
Ph: (310) 982-2984
Fax: (818) 963-5954
ari@mossbollinger.com

Attorneys for Plaintiff Susie Gazazyan

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DIVISION

| | |
|---|---|
| **SUSIE GAZAZYAN** )<br><br>         **Plaintiffs,** )<br>    **vs.** )<br><br>**GEICO CASUALTY COMPANY, a** )<br>**Maryland Corporation; and DOES 1** )<br>**through 10,** )<br><br>         **Defendants.** )<br> )<br> )<br> )<br> )<br> | **CASE NO.   20STCV32712**<br><br>**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**<br><br>1.  **BREACH OF CONTRACT**<br>2.  **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW PLAINTIFF Susie Gazazyan, ("Plaintiff") who hereby alleges:

### INTRODUCTION

1.      Plaintiff Susie Gazazyan and Defendant GEICO Casualty Company ("GEICO"), a Maryland Corporation had an insurance contract that was valid and enforceable during the period of time that included February 10, 2019.

2.      This lawsuit, as explained below in detail, arises out of breaches by GEICO of the insurance contract, and breaches by GEICO of the covenant of good faith and fair dealing.

3.      Specifically, as complained of herein, and alleged herein, Plaintiffs contend that GEICO: (1) breached its insurance contract with Plaintiff; and (2) breached the implied covenant of good faith and fair dealing as owed to Plaintiff.

## PARTIES

4.      **Susie Gazazyan ("Plaintiffs"):**  was insured in the State of California pursuant to an insurance policy with Defendant GEICO. Plaintiffs insured multiple vehicles with GEICO, including a Mercedes Benz GL450 with Vehicle Identification Number ("VIN") 4JGDF7CE6DA168477 ("The Insured Vehicle). The insurance policy included coverage for vehicle theft.

5.      **Government Casualty Company ("GEICO"):** is a Maryland based corporation wholly owned by Berkshire Hathaway. GEICO is licensed to sell insurance in the State of California and is regulated by the California Department of Insurance. GEICO is related to the following companies Government Employees Insurance Company, GEICO General, and GEICO Indemnity. These companies are related to each other, and the claims personnel at 14111 Danielson Street in Poway, California adjust and handle claims for all companies. These companies are, for all intents and purposes related entities with no appreciable difference except in the way the risks are grouped at the time of underwriting. GEICO is a defendant in this litigation.

6.      **DOES 1-10:**  Plaintiff is ignorant of the true names, capacities, relationships and extent of participation in the conduct alleged herein of the Defendants sued herein as DOES 1 through 10, but are informed and believes and based upon such information and belief allege that said Defendants are legally responsible for the wrongful conduct alleged herein and therefore sue these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Additionally, Plaintiff is informed and believes and based upon such information and belief alleges that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, and/or carried out a joint scheme, business plan or

policy in all respects pertinent hereto, and/or the acts of each Defendant are legally attributable to the other Defendants.

7.     Plaintiff refers to GEICO, and DOES 1-10 collectively as "The Defendants" or "Defendants".

## IDENTIFICATION OF EXHIBITS

8.     Plaintiff contends that true and correct copies of the following documents upon which Plaintiff relies in making the claims in this lawsuit are attached hereto:

- Attached as Exhibit A is a true and correct copy of proof of the policy of insurance between Plaintiff and GEICO;

- Attached as Exhibit B is a copy of the police report taken by the Los Angeles Police Department on February 10, 2019;

- Attached as Exhibit C is a copy of the Police Report generated by the Los Angeles Police Department on March 16, 2019, when the Insured Vehicle was recovered; and

- Attached as Exhibit D is a copy of a letter from GEICO denying Plaintiffs' insurance claim for the theft and damage to The Insured Vehicle dated October 7, 2019.

## GENERAL ALLEGATIONS

9.     At all times relevant, Plaintiff is informed and believes that GEICO sold and provided insurance in the State of California pursuant to not only the statutory and regulatory laws of the State of California governing the business of insurance, but also subject to relevant and applicable common law, as established in California decisional.

10.     Plaintiff is informed and believes and based thereon alleges that at all relevant times GEICO knew the following to be true:

- Refusing to pay the benefits due under the policy unreasonably, without proper cause, breaches an insurer's implied covenant of good faith and fair dealing. This obligation is imposed by law. Moreover, such a breach gives rise to a tort measure

of damages, rather than merely damages based on what is owed under the terms of the contract. *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d, 566, 574.

- A tortious breach of the implied covenant may support an award of punitive damages against the insurer if the other requirements for a punitive damage award (i.e., "oppression, fraud or malice") were met. *Neal v. Farmers Ins. Exch.* (1978) 21 Cal.3d 910, 922-923.

- The essence of the implied covenant of good faith and fair dealing is that [t]he insurer must refrain from doing anything that will injure the right of the insured to receive the benefits of the [insurance] agreement, the terms and conditions of which define the duties and performance to which the insured is entitled. *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1514-1515,

- The covenant of good faith and fair dealing also requires each contracting party to do everything that the contract presupposes that party will do to accomplish the contract's purpose. *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 491, 81.

- The precise nature and extent of the duty imposed by the implied covenant depends on the nature and purpose of the underlying contract and the legitimate expectations of the parties arising from the contract. *Jonathan Neil & Assocs., Inc. v. Jones* (2004) 33 Cal.4th 917, 937; *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818.

- The implied covenant of good faith and fair dealing is breached where an insurer delays or denies payment of policy benefits unreasonably (i.e., without any reasonable basis for its position) or without proper cause. *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1072-1073; *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723—"(A)n insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable"; see also *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.* (2001) 90 Cal.App.4th 335, 346-347.

- The implied covenant in insurance cases requires objective fair dealing with the insured. The sole issue is whether the position the insurer took was objectively reasonable. The insurer's subjective belief in the validity of its position is irrelevant. *Morris v. Paul Revere Life Ins. Co.* (2003) 109 CA4th 966, 973; *Bosetti v. United States Life Ins. Co. in City of N.Y.* (2009) 175 Cal.App.4th 1208, 1236.

- The implied covenant of good faith and fair dealing requires the insurer "to give at least as much consideration" to the interests of its insured as it does to its own. *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 C3d 809, 818-819. This is because, insurance companies know that people buy insurance to obtain peace of mind and security, and that they expect to be paid promptly in the event of loss. Having sold

insurance on this basis, insurers are not permitted to put their interest (in avoiding claims losses) ahead of the insureds' interests in obtaining the protection for which they bargained. *Id.* at 819.

- Although a covered loss is required, breach of an express policy provision is not essential to a bad faith claim. Rather, the breach of the implied covenant of good faith and fair dealing may be based on the insurer's failure or refusal to discharge contractual responsibilities whether or not it also constitutes a breach of a consensual contract term. See *Schwartz v. State Farm Fire & Cas. Co.* (2001) 88 Cal.App.4th 1329, 1339.

- Where coverage turns on factual questions, the erroneous withholding of policy benefits resulting from failure to investigate the claim thoroughly breaches the insurer's implied covenant of good faith and fair dealing. To protect the insured's peace of mind and security, "an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819; *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 721.

- The insurer's duty to investigate "thoroughly" arises out of its implied covenant of good faith and fair dealing: "For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement … it is essential that an insurer fully inquire into possible bases that might support the insured's claim." *Egan v. Mutual of Omaha Ins. Co.*, supra, 24 Cal.3d at 819; *Hughes v. Blue Cross of Northern Calif.* (1989) 215 Cal.App.3d 832, 846.

- An insurance company's duty to conduct a thorough investigation may include the duty to interview witnesses with significant information. See *Downey Sav. & Loan Ass'n v. Ohio Cas. Ins. Co.* (1987) 189 Cal.App.3d 1072, 1084.

- An insurer's duty to investigate is not limited to the facts and coverage theories advanced by the insured. Its duty extends to whatever facts or coverage theories would support recovery under the policy. An insurer must "fully inquire into possible bases that might support the insured's claim." *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1072.

- An insurer which accuses its insured of a crime to avoid payment of a claim o is guilty of "bad faith" if it has no facts to back up its accusations. It makes no difference whether the accusation is made to third parties or only to the insured. *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575.

- "A careless disregard for the rights of an insured and an obstinate persistence in an ill-advised initial position" on the part of an insurer may amount to "oppression" under Cal. Civ. Code § 3294. *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 892.

- "An insurer cannot escape bad faith liability by adopting an interpretation of its policy grounded only in the subjective perceptions of its unguided claims adjusters. Arbitrary interpretation of insurance contracts is the antithesis of the reasonable dealing required by the covenant of good faith." *Amadeo v. Principal Mut. Life Ins. Co.* (9th Cir. 2002) 290 F.3d 1152, 1163.

11.     Prior to February 10, 21019, GEICO underwrote an insurance policy that insured Plaintiff and The Insured Vehicle.

12.     The Policy included coverage for property damage, comprehensive collision coverage, theft, and vandalism.

13.     The Policy, as issued by GEICO, included the promise that Defendants would abide by and comply with all provisions of the California Insurance Code and the Department of Insurance Regulations.

14.     The Policy also includes an implied covenant of good faith and fair dealing, and relevant case law.

15.     At all relevant times applicable to the claims herein, Plaintiff is informed and believes and based on such information and belief alleges that all independent experts knew or had reasons to know of the contractual relationship between GEICO and Plaintiff.

16.     On or about February 10, 2019, Plaintiff parked The Insured Vehicle near the residence at which she was staying in Van Nuys, California. Another residence near where Plaintiff parked the vehicle had and has security cameras facing the street.

17.     Between late in the evening February 9, 2019 and the time she reported the loss to the Los Angeles Police Department (approximately 1:19 pm) February 10, 2020, Susie Gazazyan was inside the residence at 15154 Gault Street Van Nuys, California, sleeping (during the evening hours) and conducting work as a plumbing company dispatcher and office manager during the early morning hours.

18.     On February 10, 2019, Susie Gazazyan went outside the Gault Street residence at which was staying and discovered that the Insured Vehicle was missing.

19.     Thereafter Susie Gazazyan  contacted the Los Angeles Police Department, and filed a stolen vehicle report.

20.     Additionally, Susie Gazazyan contacted the neighbor who has a security camera facing the street where Plaintiff parked the Insured Vehicle and was able to download the security footage.

21.     Plaintiff then notified GEICO about the loss. GEICO opened an insurance claim (GEICO Claim Number 0511404980101055).

22.     On or about March 16, 2019, the Los Angeles Police Department informed Plaintiff that The Insured Vehicle had been found the parking lot of a shopping mall in Sherman Oaks, California. Plaintiff went to the vehicle and, to Plaintiff, it looked as if someone had been living in the vehicle.

23.     GIECO inspected the vehicle and sent the claim to its Special Investigations Unit.

24.     The Special Investigations Unit made certain document and item demands on Plaintiff, which Plaintiff made every effort to comply with.

25.     Between February 2019 and October 9, 2019, Plaintiff and her family moved to Palmdale, California into a newly constructed home.

26.     During that transition, Plaintiff lost one of the key fobs for the Insured Vehicle.

27.     During Plaintiff's examination under oath, Plaintiff was asked to provide bank records, and mobile phone records for certain months. Plaintiff gathered all the information she could, and provided that information, as best as she was able.

28.     Finally, on October 9, 2019, after sitting for an Examination Under Oath, providing banking telephone records, and other documents, GEICO denied Plaintiffs' claim. On October 7, 2019, GEICO denied Plaintiffs' claim stating the following (See Exhibit D hereto):

> This disclaimer and/or denial is made because we have not been able to complete our investigation due to your failure to cooperate with our investigation. As of the date of this letter, we have not received your key fob that is needed to complete our key lock and ignition analysis, nor your complete bank records. Therefore, there is no coverage for this loss.

According to your California Family Automobile Policy Contract, Section III – Physical Damage Coverages, Conditions #3, it states:

3. ASSISTANCE AND COOPERATION OF THE INSURED

The **_insured_** will cooperate and assist us, if requested:

(a) in the investigation of the loss;
(b) in making settlements;
(c) in the conduct of suits;
(d) in enforcing any right of subrogation against and legally responsible person or organization;
(e) at trials and hearings;
(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses

29.     At all times relevant GEICO knew the genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. An insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

30.     At all times relevant GEICO knew that in the insurance bad faith context, a dispute is not "legitimate" unless it is founded on a basis that is reasonable under all the circumstances

31.     At all times relevant GEICO knew that an insurance company's duty to conduct a thorough investigation includes the duty to interview witnesses with significant information.

32.     At all times relevant GEICO knew that where evidence is available to the insured and the insurer equally, the insurer is required to initiate its own investigations rather than merely sit back and find fault with information provided by the insured.

33.     At all times relevant GEICO knew that a trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim.

34.     At all times relevant GEICO knew that an insurer cannot claim a 'genuine dispute' regarding coverage in such cases because, by failing to investigate, it has deprived itself of the ability to make a fair evaluation of the claim.

35.     Plaintiff is informed and believes that GIECO's basis for denying The Claim does not give rise to a genuine dispute because GEICO's actions, fail to consider the evidence support the claim, including video evidence, and evidence of the condition of the vehicle at the time of its recovery.

36.     Here, the facts as explained in GEICO's denial letter of August 2019, show the following:

- GEICO did not fully investigate the grounds for its denial. Instead, GEICO jumped to the decision to deny and sought every possible way to justify its denial, despite every extraordinary effort made by Plaintiff;

- GEICO only focuses on the facts that support its denial. Rather than looking for the facts that support coverage.

37.     Plaintiff is informed and believes and based upon such information and belief alleges that the conclusion that Plaintiff failed to cooperate is a result of GEICO's bias and antipathy towards Armenian-American insureds. This is based on the following fact, as GEICO has represented in at least one court in this state:

- GEICO has no way of searching and determining whether it manufactures ways to deny claims of Armenian-Americans at a higher rate than it accuses members of other ethnic groups, because GEICO has no way of searching claim files other than with an insured's name, policy number, or claim number.

38.     Moreover, upon realizing that the insured was an Armenian-American, and understanding that she was making a first-party insurance claim, GEICO stopped investigating with an eye towards finding coverage (as required by California law) and began investigating with the intent of finding a basis to deny Plaintiff's claim. In all likelihood, GEICO first attempted to deny for fraud, but was unable to deny for fraud, when it realized that there was security footage demonstrating that Plaintiff could not and did not manufacture a vehicle theft to recover insurance proceeds. As such, GEICO instead of being able to read ever discrepancy as a material misrepresentation with the intent to defraud, decided to make demands for records that

are not reasonably calculated to establish coverage, and determined to deny because Plaintiff was unable to comply with the requests.

39.     Plaintiff is informed and believes and based upon such information and belief alleges that no individual from GEICO considered whether conducting an investigation with the intent to deny coverage violated GEICO's obligations under California law.

40.     GEICO made no effort to find coverage and instead only sought evidence to confirm that coverage was not available to Plaintiff.

41.     GEICO's investigation was not thorough, and GEICO failed to consider every possible way coverage might be extended to Plaintiff, and rushed to use the preferred vendor's report so that GEICO could avoid paying and attempt to manufacture a so-called genuine dispute by simply relying on its expert.

42.     GEICO failed to conduct a fair, and thorough investigation of The Claim, as exhibited by the fact that GEICO did not do many critical things, an instead determined to deny Plaintiff's claim for whatever reason the policy would allow.

43.     Despite these failings, GEICO maintains that it acted reasonably when it denied the claim.

44.     GEICO's denial of The Claim was predicated on GEICO's unfoudned conclusion that Plaintiff failed to cooperate. Moreover, as explained herein, GEICO rached such a conclusion without actually investigating the claim in the manner required by California law.

45.     GEICO cannot claim that performance of the contract was excused because Plaintiff failed to meet their contractual obligations. Plaintiffs make this representation based on the following:

- At the time of The Claim, Plaintiff was current on her owed insurance premiums.

- At no point did Plaintiff refuse to cooperate with GEICO, despite the denial of October 2019.

- At no point did Plaintiffs refuse to participate in a recorded statement.

- At no point did Plaintiffs refuse to make available The Insured Vehicle to GEICO.

- At no point did Plaintiffs refuse to sit for an Examination Under Oath.

46.     At no time did any GEICO employee, act in any way that was outside the scope of said employee's authority. That is to say, the employees of GEICO involved in investigating Plaintiff's claim, and making the claims decisions with respect to The Claim were making decisions that were approved of and ratified by managing agents of GEICO. That is because, though management does not involve itself in the claims, management has authorized GEICO underlings to act on its behalf with all the authority necessary to deny and pay claims and make determinations to deny claims.

47.     Every GEICO employee intended for and intend for Plaintiff to rely and continue to rely on representations to them about the investigation, with the express intent of having Plaintiffs  "drop their insurance claim" and waive their rights to file this lawsuit, and waive all legal rights, despite the fact that the claim was meritorious.

48.     Every GEICO employee continues to make representations about the investigation of The Claim, and the conclusions about failure to cooperate without actual factual support, but only the desire to deny and the absolute focus of finding any way to deny. Despite this fact GEICO maintains that it properly denied The Claim.

49.     Plaintiff, encountering these representations began to have emotional strain, and suffered distress. Upon hearing these representations, Plaintiff realized that she would incur the financial burden of repairing and/or replacing The Insured Vehicle, despite the fact that GEICO had promised to provide coverage to her in the event of a loss such as the one herein.

50.     As a result of GEICO's actions with respect to the failure to cooperate, Plaintiff suffered harm, humiliation and degradation. Specifically, Plaintiff suffered emotional distress, humiliation, mental suffering, loss of enjoyment of life, grief, and anxiety.

51.     The failure to cooperate identified in GEICO's denial letter formed the basis for GEICO's conclusion that Plaintiff failed to cooperate, despite the fact that these so-caled failures

do not conclusively demonstrate such a failure, and nor the evidence establish that there is such a failure.

52.     Exclusively based on the alleged failures to cooperate identify in the October 2019 letter, GEICO concluded that Plaintiff breachd her obligation under the insurance policy.

53.     At no time has GEICO demonstrated that Plaintiff failed to assist in the investigation of the loss. Plaintiff did every requested of her, and nonetheless GEICO claims Plaintiff failed to cooperate.

54.     If at any point prior to a verdict in this matter, GEICO tenders payment to Plaintiffs for The Claim, GEICO will only do so because of this litigation and the industry of Plaintiffs' counsel. If at any point, after the filing of this lawsuit, GEICO pays Plaintiffs' insurance claim, it is a direct result of the actions taken on Plaintiffs' behest by Plaintiffs' attorneys, and that GEICO will owe *Brandt Fees* for the efforts of Plaintiffs' attorneys in securing payment of the insurance policy benefits, even if such fees far exceed the value of the benefits.[1]

55.     GEICO believes it has investigated every basis for coverage, and that GEICO believes it has conducted a thorough and complete investigation, and as such to the extent during the course of this litigation, GEICO pays Plaintiffs' insurance claim, GEICO will have done so based upon information and knowledge gained through litigation.

## JURISDICTION AND VENUE

56.     This Court has jurisdiction pursuant to California Code of Civil Procedure § 410.10.

57.     Venue is proper in the Los Angeles Superior Court, at the Central Courthouse, because the circumstances and facts giving rise to this complaint transpired in this County and are of such a quality that the filing of this lawsuit can be filed in the Stanley Mosk Courthouse.

## FIRST CAUSE OF ACTION

---

[1] GEICO has litigated at least one other bad faith case with Plaintiff's counsel herein where extensive discovery has been conducted.

## BREACH OF CONTRACT
### (By Plaintiff against Defendant GEICO, and DOES 1 through 10)

58.     Plaintiff incorporates paragraphs 1 – 57 inclusive, as though fully set forth herein.

59.     As set forth above, Plaintiff entered into a written contract of insurance (with implied provisions) with GEICO.

60.     As set forth above, GEICO was properly notified of the loss.

61.     GEICO refused to pay insurance policy benefits for Plaintiff's covered loss, and as a result Plaintiff suffered damages.

62.     As more fully set forth in the paragraphs incorporated herein, GEICO's  breach of contract is exemplified by: (a) failing to investigate and indemnify Plaintiffs under applicable coverages; (b) breaching the implied covenant of good faith and fair dealing; (c) withholding benefits that are due to Plaintiffs; (d) denying a covered loss; (e) failing to diligently pursue a thorough, fair and objective investigation; (f) failing to promptly provide claim related documents and other breaches according to proof; (g) using Plaintiff's national origin as a basis for determining if coverage should be afforded; and other as of yet to be discovered breaches.

63.     Plaintiffs performed all covenants and conditions required under the subject policy and/or have been excused from doing so due to GEICO's breaches.

64.     There was no legitimate or reasonable basis to conclude that The Claim fell under an exclusion found in the subject policy. GEICO's claims handling was the result of a biased, skewed and result oriented investigation designed to withhold benefits due to Plaintiff.

65.     As a proximate result of GEICO's conduct, Plaintiff suffered significant economic loss in an amount according to proof, including the promised benefit of paying for a covered loss.

///

///

///

///

///

### SECOND CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING
**(By Plaintiff against Defendant GEICO, and DOES 1 through 10)**

66.     Plaintiff incorporates paragraphs 1 – 65 inclusive, as though fully set forth herein.

67.     As explained herein, Plaintiff suffered loss covered by the insurance contract between Plaintiff and GEICO.

68.     As explained herein, GEICO was properly and timely notified of the covered loss.

69.     As explained by the paragraphs incorporated herein, GEICO unreasonably denied The Claim.

70.     GEICO's decision to deny Plaintiff's claim was unreasonable for multiple reasons, including, but not limited to: (1) GEICO failed to thoroughly investigate the claim; (2) GEICO retained biased experts; (3) GEICO failed to comply with California law; (4) GEICO failed to examine all avenues supporting payment of the claim; and (5) GEICO used Plaintiff's national origin as a basis for concluding that Plaintiff was not entitled to coverage.

71.     As a result of GEICO's unreasonable denial of policy benefits, Plaintiff suffered harm, which includes, but is not limited to: (1) emotional distress; (2) financial damages; (3) the requirement to hire an attorney to pursue her rights.

72.     GEICO's actions are a substantial factor in causing Plaintiff's harm.

73.     As a result of GEICO's breach of the implied covenant of good faith and fair dealing Plaintiffs are entitled to compensatory damages, *Brandt Fees* which are damages and not mere attorneys' fees, general damages, and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.     For compensatory, general, consequential, emotional distress damages, and incidental damages, in an amount according to proof;

2.     For costs and expenses of suit, including attorney's fees pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, which conclude that attorneys' fees for denial of policy

benefits are not simply statutory attorneys' fees but are, in fact damages, akin to medical expenses;

      3.      For pre-judgment and post-judgment interest;

      4.      For exemplary/punitive damages pursuant to Civil Code §3294.

      5.      For such other relief as the Court deems proper.

Date: August 27, 2020

MOSS BOLLINGER, LLP

By: _____

Ari E. Moss

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury, for all claims so triable.

Date: August 27, 2020

MOSS BOLLINGER, LLP

By: _____

Ari E. Moss

Attorneys for Plaintiff

# EXHIBIT A



**Tel:** 1-800-841-3000

geico.com

**GEICO INDEMNITY COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

Date Issued: January 5, 2019

SUSIE GAZAZYAN
39123 DUNBAR ST
PALMDALE CA  93551-4928

# Declarations Page

This is a description of your coverage.
Please retain for your records.

## Policy Number: 4361-04-13-22
## Coverage Period:

02-08-19 through 08-08-19
12:01 a.m. standard time at the address of the named insured.

Email Address: susiegazazyan@gmail.com

| Named Insured | | Additional Drivers | |
|---|---|---|---|
| Susie Gazazyan | | None | |

| Vehicle | | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|---|
| 1 2013 M Benz | GL450 | 4JGDF7CE6DA168477 | Palmdale CA 93551 | Ally Bank |

| Coverages* | Limits and/or Deductibles | Vehicle 1 |
|---|---|---|
| **Bodily Injury Liability** | | |
| Each Person/Each Occurrence | $15,000/$30,000 | $183.00 |
| State Minimum $15,000/$30,0000 | | |
| **Property Damage Liability** | $50,000 | $219.40 |
| State Minimum $5,000 | | |
| **Medical Payments** | $5,000 | $62.70 |
| **Uninsured & Underinsured Motorists** | | |
| Each Person/Each Occurrence | $15,000/$30,000 | $44.30 |
| Comprehensive | $1,000 Ded | $182.00 |
| Collision | $1,000 Ded/Waiver | $466.80 |
| Rental Reimbursement | $50 Per Day | $31.40 |
| | $1,500 Max | - |

### Total Six Month Premium

**$1,189.60**

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

**Discounts**

Anti-Theft Device (All Vehicles)
California Good Driver (All Vehicles)

**Discounts continued**
  California Persistency (All Vehicles)
  Passive Restraint/Air Bag (All Vehicles)

---

**Group Insurance Plan:**
  **Standard Group Insurance Plan**

---

**Contract Type:** A30CA
**Contract Amendments:** ALL VEHICLES - A30CA A54CA

**Unit Endorsements:**   A431 (VEH 1); CRA343C (VEH 1); UE316C (VEH 1)

**Class:** 0 -N -19SF  T (VEH 1)

---

### Important Policy Information

-The estimated annual mileage figures applicable to the vehicles on your policy for the current and upcoming policy periods are:

| Vehicle | Current Mileage | Upcoming Mileage |
|---|---|---|
| 2013  M BENZ  GL450 | 12,000 | 12,000 |

-Please verify that the coverages you requested are accurately reflected on your Declarations Page. Visit geico.com to review additional coverages and/or limits available to you.

-No coverage is provided in Mexico.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks or vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-In California, you have the right to designate one person to receive notices from GEICO if your policy is about to cancel or expire for non-payment. Your designee will not have any rights or benefits under your policy other than the right to receive the notice or make a payment. You can change or remove the designee at any time. If you would like to add, change or remove a designee from your policy, simply log into your account at geico.com or call us at 1-800-841-3000.

-We have great news. Along with the outstanding service you have come to know with GEICO, we are offering you a lower insurance premium. We look forward to many more years of providing you outstanding customer service and great rates.

-In accordance with Section 1872.87 of the California Insurance Code, in addition to your premium, a $0.88 charge per vehicle is assessed to fund auto insurance fraud reduction initiatives. This charge is applied once per policy term per vehicle.

-A credit or discount has been applied to this policy: California Good Driver.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

**SECTION II - AUTO MEDICAL PAYMENTS**
**EXCLUSIONS**
**When Section II Does Not Apply**
The following exclusion is revised:
1.  Section II does not apply to **bodily injury** sustained by any occupant of an **owned auto** or **non-owned auto**:
    (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
    (b) while being used for **ride-sharing**.
    However, a vehicle used in an ordinary car pool is covered.
    This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle.
The following exclusions are added:
8.  There is no coverage for **bodily injury** that results from nuclear exposure or explosion including resulting fire radiation or contamination.
9.  There is no coverage for **bodily injury** that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.
10. There is no coverage for **bodily injury** that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.
11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**.
12. There is no coverage for **bodily injury** caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
13. There is no coverage for **bodily injury** caused by the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
14. There is no coverage for **bodily injury** sustained by any **insured** while operating, **occupying**, or when struck as a pedestrian by any vehicle leased by **you** or a **relative** for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.
15. There is no coverage for **bodily injury** sustained by any **insured** while operating, **occupying**, or when struck as a pedestrian by any vehicle regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.
16. There is no coverage for **bodily injury** to any **insured** arising out of:
    a)  any automobile rented or leased by **you** or a **relative** for the purpose of providing **ride-sharing** services. An automobile is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the automobile to be used for **ride-sharing** with a **transportation network company**; or
    b)  any automobile rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or
    c)  any automobile rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or
    d)  any automobile rented or leased by **you** or a **relative** which displays an exterior marking that identifies the automobile as a vehicle for hire.
    This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**CONDITIONS**
Condition **5.** SUBROGATION is replaced with the following:
5.  REIMBURSEMENT AGREEMENT AND OFFSET PROVISION. OUR RIGHT TO RECOVER PAYMENT.
    When any **insured** has been paid by us under this policy provision and also recovers from another person, entity, or organization, we shall be entitled to reimbursement of the amount of our payment, as provided in this Section. We will seek reimbursement regardless of whether the **insured** (or his or her estate, parent or legal guardian) was paid for all damages arising from the loss or whether or not the **insured** was made whole.
    Our right to reimbursement applies to any payments received by the **insured** and to payments to be received by the **insured** that arise from but are not limited to any one or more of the following:
    (a) Any award, judgment or settlement that may result from the exercise of any rights of recovery of the **insured** against any person, entity, or organization that the **insured** claims is responsible for **bodily injury** to the **insured** for which payment under Auto Medical Payments coverage has been made.
    (b) Any payment received, or to be received, by or on behalf of an **insured** under the provisions of any:
        (i)   Automobile, premises or other insurance coverage affording benefits for medical coverage;
        (ii)  Individual blanket or group accident, disability or hospitalization insurance;
        (iii) Medical, surgical, hospital or funeral service benefits or reimbursement plan; or
        (iv)  Workers' compensation or disability benefits law or any similar law.

Prior to payment being made under this coverage, each party, including the representative and/or insurer of that party, whose act allegedly caused the **bodily injury** may be notified of this reimbursement agreement. If an award or judgment against, or settlement with, any party that the **insured** claimed was responsible for the **bodily injury** has been concluded, then the amounts we owe under this coverage shall be reduced by the amount of that award, judgment or settlement.

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The definitions of **personal vehicle sharing program, ride-sharing** and **transportation network company** under Section I apply to Section III also.

Definition **7. Non-owned auto** is replaced with the following:

7. **Non-owned auto** means a **private passenger auto**, **farm auto** or **utility auto** or **trailer** not owned by or furnished for the regular use of either **you** or **your relative**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or **trailer** within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

    A **non-owned auto** does not include:

    a) any automobile rented or leased by **you** or a **relative** for the purpose of providing **ride-sharing** services. An automobile is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the automobile to be used for **ride-sharing** with a **transportation network company**; or

    b) any automobile rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or

    c) any automobile rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or

    d) any automobile rented or leased by **you** or a **relative** which displays an exterior marking that identifies the automobile as a vehicle for hire.

Definition **9. Trailer** is revised as follows:

9. **Trailer** means a trailer of the flatbed variety designed for use with a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

The following definitions are added:

10. **Custom parts or equipment** means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a) Are permanently installed or attached; or

    (b) Alter the appearance or performance of a vehicle.

    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

11. **Child Passenger Restraint System** means a child passenger restraint system that meets Federal Motor Vehicle Safety Standards as required under the Vehicle Code of California Division 12, Chapter 5, Article 3.3 §27360.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

The following paragraph is added:

4. We will pay for the replacement of any **child passenger restraint system** that is damaged in a covered **loss**.

### EXCLUSIONS

#### When The Physical Damage Coverages Do Not Apply

The following exclusion is revised:

1. There is no coverage for **loss** to an auto:

    (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

    (b) while being used for **ride-sharing**.

    However, a vehicle used in an ordinary car pool is covered.

The following exclusions are added:

11. There is no coverage for **loss** that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

12. There is no coverage for **loss** that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.

13. We do not cover **loss** for **custom parts or equipment**, in excess of $1,000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

Policy Number:

**14.** There is no coverage for any liability assumed under any contract or agreement.

**15.** There is no coverage for *loss* resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an *owned auto*.

**16.** There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

**17.** We do not cover *loss* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

**18.** There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**19.** There is no coverage for any *loss* caused by participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.

**20.** There is no coverage for any *loss* caused by the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

**21.** Section III does not apply to any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**22.** Section III does not apply to any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**LIMIT OF LIABILITY**

Paragraph **2.** is replaced with the following:

**2.** will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price.

Paragraph **5.** is replaced with the following:

**5.** for *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle. However, the most we will pay for *loss* to *custom parts or equipment* is $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

**CONDITIONS**

**1.** NOTICE

The following paragraph is added:

In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle. The *insured* must cooperate fully with the policy investigation, with the prosecution of any person(s) charged with theft, and with any civil suit brought by us against the person(s) responsible to recover for the *loss*.

**4.** ACTION AGAINST US

The following paragraph is added:

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

Condition **10.** Assignment is added:

**10.** ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE**
**EXCLUSIONS**
**When Section IV Does Not Apply**
Exclusion **2.** is replaced as follows:

**2.** *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured motor vehicle* or *underinsured motor vehicle* owned or operated by an *insured* or a *relative* is not covered, except when the injured *insured's* vehicle is being operated, or caused to be operated, by a person without the injured *insured's* consent in connection with criminal activity that has been documented in a police report and that the injured *insured* is not a party to.

The following exclusions are added:

**7.** *Bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

**8.** *Bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents released as an act of terrorism is not covered.

**9.** This coverage does not apply to any liability assumed under any contract or agreement.

**10.** There is no coverage for *bodily injury* or property damage sustained by an *insured* while operating or *occupying* a motor vehicle owned by or available for the regular use of *you* or any *relative* and which is not insured under the liability coverage of this policy.

**11.** There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**12.** There is no coverage for *bodily injury* or property damage caused by an *insured's* participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.

**13.** There is no coverage for *bodily injury* or property damage caused by an *insured's* operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

**14.** There is no coverage for *bodily Injury* or property damage under this Section for any person or organization while an *owned auto* or *non-owned auto*:
   (a) is being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) is being used for *ride-sharing*.
   However, a vehicle used in an ordinary car pool is covered.

**15.** There is no coverage for *bodily injury* sustained by any *insured* while operating or *occupying* any vehicle leased by *you* or a *relative* for less than six months and which is not insured under the liability coverage of this policy.

**16.** There is no coverage for *bodily injury* sustained by any *insured* while operating or *occupying* any vehicle regularly rented by *you* or a *relative* on a daily, weekly or monthly basis and which is not insured under the liability coverage of this policy.

**17.** There is no coverage for *bodily injury* to any *insured* arising out of:
   a) any automobile rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. An automobile is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the automobile to be used for *ride-sharing* with a *transportation network company*; or
   b) any automobile rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or
   c) any automobile rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or
   d) any automobile rented or leased by *you* or a *relative* which displays an exterior marking that identifies the automobile as a vehicle for hire.
   This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**LIMITS OF LIABILITY**
Paragraph **4.** is replaced as follows:

**4.** Underinsured Motorists Coverage does not apply to any *bodily injury* until the limits of bodily injury liability policies applicable to all insured autos causing the injury have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

**CONDITIONS**
Condition **3.** is replaced as follows:
**3.** CLAIMS NOT SETTLED WITHIN TWO YEARS OF DATE OF ACCIDENT
California law provides that any ***bodily injury*** claim for uninsured/underinsured benefits provided by this policy
expires two years after the accident unless one of the following actions is taken within two years from the date of the
accident:
(a) Suit is filed for ***bodily injury*** against the uninsured motorist in a court of competent jurisdiction,
(b) Agreement is reached with us as to the amount due under the policy, or
(c) We are notified in writing, by certified mail, return receipt requested, that formal arbitration is demanded.
If one of these events does not occur within two years following the date of the accident, we will not be liable for any
further uninsured/underinsured benefits or claims based upon injuries sustained in the accident.
**SECTION V - GENERAL CONDITIONS**
The following conditions are revised as follows:
**4.** ASSIGNMENT
***Your*** rights and duties under this policy may not be assigned without our written consent. If ***you*** die, this policy will
cover ***your*** surviving spouse or registered domestic partner if covered under the policy prior to ***your*** death. Until the
expiration of the policy term, we will also cover:
(a) The executor or administrator of ***your*** estate, but only while operating an ***owned auto*** and while acting within the
scope of his duties; and
(b) Any person having proper custody of and operating the ***owned auto***, as an ***insured***, until the appointment and
qualification of the executor or administrator of ***your*** estate.
**5.** POLICY PERIOD
Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our
offer to renew and ***your*** acceptance by payment of the required renewal premium prior to the expiration date. Each
period will begin and expire as stated in the declarations.
**7.** CANCELLATION BY US, item (b) is deleted.
**8.** CANCELLATION BY US IS LIMITED
We will not cancel except for any of the following reasons:
(a) Nonpayment of premium;
(b) Fraud or material misrepresentation affecting the policy or ***insured***;
(c) A substantial increase in the hazard insured against.
The following conditions are added:
**17.** CHOICE OF LAW
The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of
California.
**18.** UNDERWRITING CRITERIA
Coverage is not provided for any person for any vehicle which does not meet our underwriting criteria for the types
and uses of vehicles insurable under our **FAMILY AUTOMOBILE INSURANCE POLICY** in the state of California.


We affirm this amendment.


W. C. E. Robinson
Secretary

William E. Roberts
President

# GEICO

## Automobile Policy Amendment
### California

Policy Number:

*Your* policy is amended as follows:

## SECTION I - LIABILITY COVERAGES
### DEFINITIONS

The following definitions are revised as follows:

1.  **Auto business** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

3.  **Farm auto** means a truck type vehicle with a gross vehicle weight of 10,000 pounds or less, not used for commercial purposes other than farming.

11. **Utility auto** means a vehicle, other than a *farm auto*, with a gross vehicle weight of 10,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

13. **You** and *your* means the policyholder named in the declarations or his or her spouse or registered domestic partner if a resident of the same household.

The following definition is added:

14. **Personal vehicle sharing program** means a business, organization, network or group facilitating the sharing of private passenger vehicles for use by individuals or businesses.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item **3.** is revised as follows:

3.  Interest calculated on that part of a judgment that is within our limit of liability and accruing:

    (a) Before the judgment, where owed by law, and until we pay, offer to pay or deposit in court the amount due under this coverage;

    (b) After the judgment, and until we pay, offer to pay or deposit in court, the amount due under this coverage.

After Item **5.** the following sentence is added:

6.  We will upon request by an *insured,* provide reimbursement for the following items:

Items **6.**, **7.**, and **8.** are renumbered and revised as follows:

    (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an   **owned auto** or **non-owned auto.**

    (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

    (c) All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS
### When Section I Does Not Apply

The first two paragraphs are revised as follows:

We will not pay damages if any one of the following exclusions  **1.** through **15.**, **16.**, or **17.** applies.

We will neither pay damages nor defend any suit for damages if one or more of exclusions  **1.**, through **6.**, **10.**, **14.**, **15.**, **16.**, or **17.** applies.

The following exclusions are added:

14. **Bodily injury** or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

15. **Bodily injury** or property damage that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism is not covered.

16. We do not cover any liability assumed under any contract or agreement.

17. We do not cover **bodily injury** or property damage that results from the operation of a  **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.

18. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a  **personal vehicle sharing program**.

## SECTION II - AUTO MEDICAL PAYMENTS
### EXCLUSIONS

A-54-CA  (07-11)    Page 1 of 4

**When Section II Does Not Apply**

The following exclusions are added:

8.  There is no coverage for *bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.
9.  There is no coverage for *bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.
10. There is no coverage for *bodily injury* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.
11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program.*

**CONDITIONS**

Condition **5.**, SUBROGATION, is replaced with the following:

5.  REIMBURSEMENT AGREEMENT AND OFFSET PROVISION. OUR RIGHT TO RECOVER PAYMENT.

    When any *insured* has been paid by us under this policy provision and also recovers from another person, entity, or organization, we shall be entitled to reimbursement of the amount of our payment, as provided in this Section. We will seek reimbursement regardless of whether the *insured* (or his or her estate, parent or legal guardian) was paid for all damages arising from the loss or whether or not the *insured* was made whole.

    Our right to reimbursement applies to any payments received by the *insured* and to payments to be received by the *insured* that arise from but are not limited to any one or more of the following:

    (a) Any award, judgment or settlement that may result from the exercise of any rights of recovery of the *insured* against any person, entity, or organization that the *insured* claims is responsible for *bodily injury* to the *insured* for which payment under Auto Medical Payments coverage has been made.

    (b) Any payment received, or to be received, by or on behalf of an *insured* under the provisions of any:
        (i)   Automobile, premises or other insurance coverage affording benefits for medical coverage;
        (ii)  Individual blanket or group accident, disability or hospitalization insurance;
        (iii) Medical, surgical, hospital or funeral service benefits or reimbursement plan; or
        (iv)  Workers' compensation or disability benefits law or any similar law.

    Prior to payment being made under this coverage, each party, including the representative and/or insurer of that party, whose act allegedly caused the *bodily injury* may be notified of this reimbursement agreement. If an award or judgment against, or settlement with, any party that the *insured* claimed was responsible for the *bodily injury* has been concluded, then the amounts we owe under this coverage shall be reduced by the amount of that award, judgment or settlement.

**SECTION III - PHYSICAL DAMAGE COVERAGES**

**DEFINITIONS**

The definition of *personal vehicle sharing program* under Section I applies to Section III also.

Definition **9. Trailer** is revised as follows:

9.  *Trailer* means a trailer of the flatbed variety designed for use with a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

The following definition is added:

10. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:
    (a) Are permanently installed or attached; or
    (b) Alter the appearance or performance of a vehicle.
    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

The following definition is added:

11. *Child Passenger Restraint System* means a child passenger restraint system that meets Federal Motor Vehicle Safety Standards as required under the Vehicle Code of California Division 12, Chapter 5, Article 3.3 §27360.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

The following paragraph is revised:

4.  We will pay for the replacement of any *child passenger restraint system* that is damaged in a covered *loss*.

**EXCLUSIONS**

**When The Physical Damage Coverages Do Not Apply**

The following exclusions are added:

11. There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.
12. There is no coverage for *loss* that results from bio- chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.
13. We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.
14. There is no coverage for any liability assumed under any contract or agreement.
15. There is no coverage for *loss* resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an *owned auto*.
16. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.
17. We do not cover *loss* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.
18. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**LIMIT OF LIABILITY**

Paragraph **2.** is replaced with the following:

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss,* or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price.

Paragraph **5.** is replaced with the following:

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

**CONDITIONS**

4. ACTION AGAINST US

   The following paragraph is added:

   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

Condition **10.** Assignment is added:

10. ASSIGNMENT

    With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE**

**EXCLUSIONS**

**When Section IV Does Not Apply**

Exclusion **2.** is replaced as follows:

2. *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured motor vehicle* or *underinsured motor vehicle* owned or operated by an *insured* or a *relative* is not covered, except when the injured *insured's* vehicle is being operated, or caused to be operated, by a person without the injured *insured's* consent in connection with criminal activity that has been documented in a police report and that the injured *insured* is not a party to.

The following exclusions are added:

7.  **Bodily injury** that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.
8.  **Bodily injury** that results from bio-chemical attack or exposure to bio-chemical agents released as an act of terrorism is not covered.
9.  This coverage does not apply to any liability assumed under any contract or agreement.
10. There is no coverage for **bodily injury** or **property damage** sustained by an **insured** while operating or **occupying** a motor vehicle owned by or available for the regular use of **you** or any **relative** and which is not insured under the liability coverage of this policy.
11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**.

**LIMITS OF LIABILITY**

Paragraph **4.** is replaced as follows:

4.  Underinsured Motorists Coverage does not apply to any **bodily injury** until the limits of bodily injury liability policies applicable to all insured autos causing the injury have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

**CONDITIONS**

Condition **3.** is replaced as follows:

3.  CLAIMS NOT SETTLED WITHIN TWO YEARS OF DATE OF ACCIDENT

    California law provides that any **bodily injury** claim for uninsured/underinsured benefits provided by this policy expires two years after the accident unless one of the following actions is taken within two years from the date of the accident:

    (a) Suit is filed for **bodily injury** against the uninsured motorist in a court of competent jurisdiction,
    (b) Agreement is reached with us as to the amount due under the policy, or
    (c) We are notified in writing, by certified mail, return receipt requested, that formal arbitration is demanded.

    If one of these events does not occur within two years following the date of the accident, we will not be liable for any further uninsured/underinsured benefits or claims based upon injuries sustained in the accident.

**SECTION V - GENERAL CONDITIONS**

Condition **4.** is replaced as follows:

4.  ASSIGNMENT

    **Your** rights and duties under this policy may not be assigned without our written consent.  If **you** die, this policy will cover **your** surviving spouse if covered under the policy prior to **your** death.  Until the expiration of the policy term, we will also cover:

    (a) The executor or administrator of **your** estate, but only while operating an **owned auto** and while acting within the scope of his duties; and
    (b) Any person having proper custody of and operating the **owned auto**, as an **insured**, until the appointment and qualification of the executor or administrator of **your** estate.

    Condition **8.** is replaced as follows:

8.  CANCELLATION BY US IS LIMITED

    We will not cancel except for any of the following reasons:

    (a) Nonpayment of premium;
    (b) Fraud or material misrepresentation affecting the policy or **insured**;
    (c) A substantial increase in the hazard insured against.

The following condition is added:

17. CHOICE OF LAW

    The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of California.

We affirm this amendment.

W.C.E. Robinson
Secretary

O.M. Nicely
President



Policy Number:

**AUTOMOBILE POLICY AMENDMENT**

**RENTAL REIMBURSEMENT AMENDMENT**

We agree with you that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto.  Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1. The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
2. The *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and

2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy.  In that event, the amount payable under this amendment is the amount by which this coverage exceeds those described in Section III of the policy; and

3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this amendment.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1. Returned to *you*;
2. Repaired;
3. Replaced; or
4. If the *owned auto* is deemed by us to be a total loss, then seventy two (72) hours after we pay the applicable limit of liability under Section III.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

A-431 (08-06)



Policy Number:

# AUTOMOBILE POLICY AMENDMENT

## COLLISION DEDUCTIBLE WAIVER

Under Section III Physical Damage Coverages:

We agree with *you* that under Collision Coverage, item 1 is amended by adding the following sentence:

No deductible applies to *Collision* loss caused by actual direct physical contact with an *uninsured motor vehicle* as defined in your policy provided:

a.   the owner or operator of the *uninsured motor vehicle* is identified; or

b.   the *uninsured motor vehicle* is identified by license number; and

c.   the *insured* or someone on his behalf reports the accident to us within ten business days; and

d.   the *insured* is legally entitled to recover from the uninsured motorist.

THE COMPANY affirms this amendment.

J. C. Stewart
Secretary

GEICO Indemnity Company

O. M. Nicely
President

CRA-343-C (8-97)

ENDORSEMENT

**LOSS PAYABLE CLAUSE**

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within 91 days after the loss, the Lienholder must do so within the following 60 days.  The policy provisions on time of payment, appraisal and the right to sue us applies both to the Lienholder and the *insured*.  We may settle a claim at our option by separate payment to the insured and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least 10 days before we cancel his interest in the policy.

This endorsement forms a part of your policy.  It is effective at 12:01 A.M. standard time at your address on the effective date shown above.

RETAIN THIS COPY FOR YOUR RECORDS

_____
Countersigned by Authorized Representative

UE-316-C (4-92)

The following definitions are added:

14. **Personal vehicle sharing program** means a business, organization, network or group facilitating the sharing of private passenger vehicles for use by individuals or businesses.

15. **Ride-sharing** means the use of any vehicle by any driver in connection with a **transportation network company** from the time a driver logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time a driver logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

16. **Transportation network company** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item **3.** is revised as follows:

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before the judgment, where owed by law, and until we pay, offer to pay or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer to pay or deposit in court, the amount due under this coverage.

After Item **5.** the following sentence is added:

6. We will upon request by an **insured**, provide reimbursement for the following items:

Items **6.**, **7.**, and **8.** are renumbered and revised as follows:
   (a) Costs incurred by any **insured** for first aid to others at the time of an accident involving an **owned auto** or **non-owned auto**.
   (b) Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.
   (c) All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

### When Section I Does Not Apply

The first two paragraphs are revised as follows:

We will not pay damages if any one of the following exclusions **1.** through **19.** applies.

We will neither pay damages nor defend any suit for damages if one or more of exclusions **1.** through **6.**, **10.**, or **14.** through **22.** applies.

The following exclusion is revised:

2. Section I does not apply to any vehicle:
   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) while being used for **ride-sharing**.
   However, a vehicle used in an ordinary car pool is covered.

The following exclusions are added:

14. **Bodily injury** or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

15. **Bodily injury** or property damage that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism is not covered.

16. We do not cover any liability assumed under any contract or agreement.

17. We do not cover **bodily injury** or property damage that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.

18. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**.

19. There is no coverage for **bodily injury** or property damage caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

20. There is no coverage for **bodily injury** or property damage arising or resulting from the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

21. Section I does not apply to any vehicle, or series of vehicles, leased by **you** or a **relative** for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

22. Section I does not apply to any vehicle, or series of vehicles, regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

Policy Number:



# Automobile Policy Amendment
## California

Policy Number:

*Your* policy is amended as follows:

**SECTION I - LIABILITY COVERAGES**

**DEFINITIONS**

The following definitions are revised as follows:

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.
3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 10,000 pounds or less, not used for commercial purposes other than farming.
5. ***Non-owned auto*** means an automobile or ***trailer*** not owned by or furnished for the regular use of either ***you*** or a ***relative***, other than a ***temporary substitute auto***. An auto rented or leased for more than 30 days will be considered as furnished for regular use.
   A ***non-owned auto*** does not include:
   a) any automobile rented or leased by ***you*** or a ***relative*** for the purpose of providing ***ride-sharing*** services. An automobile is considered to have been rented or leased for the purpose of providing ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the automobile to be used for ***ride-sharing*** with a ***transportation network company***; or
   b) any automobile rented or leased by ***you*** or a ***relative*** which is registered for use for ***ride-sharing*** with a ***transportation network company***; or
   c) any automobile rented or leased by ***you*** or a ***relative*** which is approved for use for ***ride-sharing*** by a ***transportation network company***; or
   d) any automobile rented or leased by ***you*** or a ***relative*** which displays an exterior marking that identifies the automobile as a vehicle for hire.
6. ***Owned auto*** means:
   a) a vehicle described in this policy for which a premium charge is shown for these coverages;
   b) a ***trailer*** owned by ***you***;
   c) a ***private passenger auto***, ***farm auto***, or ***utility auto***, ownership of which ***you*** acquire during the policy period or for which ***you*** enter into a lease during the policy period for six months or more, if:
      (i) it replaces an ***owned auto*** as defined in a) above; or
      (ii) we insured all ***private passenger autos***, ***farm autos*** and ***utility autos*** owned or leased by ***you*** on the date of the acquisition
      and ***you*** ask us to add it to the policy no more than 30 days later;
   d) a ***temporary substitute auto***.
9. ***Temporary substitute auto*** means an automobile or ***trailer***, not owned by ***you***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.
   A ***temporary substitute auto*** does not include:
   a) any automobile rented or leased by ***you*** or a ***relative*** for the purpose of providing ***ride-sharing*** services. An automobile is considered to have been rented or leased for the purpose of providing ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the automobile to be used for ***ride-sharing*** with a ***transportation network company***; or
   b) any automobile rented or leased by ***you*** or a ***relative*** which is registered for use for ***ride-sharing*** with a ***transportation network company***; or
   c) any automobile rented or leased by ***you*** or a ***relative*** which is approved for use for ***ride-sharing*** by a ***transportation network company***; or
   d) any automobile rented or leased by ***you*** or a ***relative*** which displays an exterior marking that identifies the automobile as a vehicle for hire.
11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 10,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.
13. ***You*** and ***your*** means the named insured shown in the declarations or his or her spouse or registered domestic partner if a resident of the same household.

Policy Number:

A F F I D A V I T

I,Josalynn Sanchez,    Claims    Coverage    Underwriter    of
**Geico Indemnity Company,**    a  corporation  organized  and  existing
under  the  laws  of  the  state  of  **Maryland,**  do  hereby  certify  that
the  attached  Policy  Declaration  sheet  was  printed   from  records
retained  in  our  computer  data  files.  The  specimen  amendments,
endorsements,   and   policy   contract   are   standard   forms   with
information  particular  to  this  policy.  Attached  is  a  copy  of
policy   contract   number   **4361-04-13-22**   in   the   name   of
**SUSIE  GAZAZYAN**  for  **New Policy**  effective  **02-08-19,**   issued   on
**01-05-19** and in effect on **02-10-19.**

_____
Josalynn Sanchez
Claims Coverage Underwriter

0511404980101055

Tuesday, June 04, 2019      7:26 AM

# EXHIBIT B

CALIFORNIA HIGHWAY PATROL

...PORT

NOTE: CHP 180 IS FURNISHED TO ALL PEACE OFFICERS BY THE CALIFORNIA HIGHWAY PATROL

06) OPI 062

| ...lice Department | LOCATION CODE 1942 | DATE/TIME OF REPORT 02/10/2019 1300 | NOTICE OF STORED VEHICLE DELIVERED PERSONALLY | FILE NO. 190906013 |
|---|---|---|---|---|

| TOWED / STOLEN FROM | ODOMETER READING | VIN CLEAR IN SVS? ✓ YES   NO | DATE / TIME DISPATCHED NOTIFIED | LOG NO |
|---|---|---|---|---|
| ...154 Gault St   RD 0914 | 85k | LIC CLEAR IN SVS? ✓ YES   NO   02/10/2019 | 1319 | N5751 |

| YEAR | MAKE | MODEL | BODY TYPE | COLOR | LICENSE NO. | | MONTH / YEAR | STATE |
|---|---|---|---|---|---|---|---|---|
| 2013 | Merz | GL450 | 4dr | Blk | 7XPW079 | ONE   TWO | 02/20 | CA |

VEHICLE IDENTIFICATION NO.

| 4 | J | G | D | F | 7 | C | E | 6 | D | A | 1 | 6 | 8 | 4 | 7 | 7 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

ENGINE NO.

VALUATION BY   OFFICER   OWNER   0-300   301-4000   4001 +   $

| REGISTERED OWNER | LEGAL OWNER |
|---|---|
| Susie Gazazyan | SAME AS R/O   Ally Fncl |
| 15154 Gault St | P.O. Box 8128 |
| Van Nuys  Ca 91405 | Cockeysville MD 21030 |

STORED     IMPOUNDED     RELEASED     RECOVERED - VEHICLE / COMPONENT

TOWING / STORAGE CONCERN (NAME, ADDRESS, PHONE)     STORAGE AUTHORITY / REASON

| TOWED TO / STORED AT | AIRBAG?   YES   NO   1   2 | DRIVEABLE?   YES   NO   JUNK   UNK | VIN SWITCHED?   YES   NO |
|---|---|---|---|

| CONDITION | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | TIRES / WHEELS | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WRECKED | | | SEAT (FRONT) | | | REGISTRATION | | | CAMPER | | | LEFT FRONT | |
| BURNED HULK per 431(c) VC | | | FRONT (REAR) | | | ALT / GENERATION | | | VESSEL AS LOAD | | | RIGHT FRONT | |
| VANDALIZED | | | RADIO | | | BATTERY | | | FIREARMS | | | LEFT REAR | |
| ENG. / TRANS. STRIP | | | TAPE DECK | | | DIFFERENTIAL | | | OTHER | | | RIGHT REAR | |
| MISC. PARTS STRIP | | | TAPES | | | TRANSMISSION | | | | | | SPARE | |
| BODY METAL STRIP | | | OTHER RADIO | | | AUTOMATIC | | | | | | HUB CAPS | |
| SURGICAL STRIP per 431(b) VC | | | IGNITION KEY | | | MANUAL | | | | | | SPECIAL WHEELS | |

| RELEASE VEHICLE TO | R/O OR AGENT | AGENCY HOLD | 22850.3 VC | GARAGE PRINCIPAL / AGENT STORING VEHICLE | DATE / TIME |
|---|---|---|---|---|---|

| NAME OF PERSON / AGENCY AUTHORIZING RELEASE | I.D. NO. | DATE | CERTIFICATION: I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I AM LEGALLY AUTHORIZED AND ENTITLED TO TAKE POSSESION OF THE ABOVE DESCRIBED VEHICLE |
|---|---|---|---|

| SIGNATURE OF PERSON AUTHORIZING RELEASE | SIGNATURE OF PERSON TAKING POSSESION |
|---|---|

STOLEN VEHICLE / COMPONENT     EMBEZZELED VEHICLE     PLATE(S) REPORT

| DATE / TIME OF OCCURRENCE 02/10/2019   0230 | DATE / TIME REPORTED 02/10/2019   1300 | NAME OF REPORTING PARTY (R/P) Susie Gazazyan | DRIVER LICENSE NO / STATE B5319415   CA |
|---|---|---|---|
| LAST DRIVER OF VEHICLE Susie Gazazyan | DATE / TIME 02/10/2019   0230 | ADDRESS OF R/P 15154 Gault St | TELEPHONE OF R/P (818) 799-7531 |

I CERTIFY OR DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT     SIGNATURE OF PERSON MAKING REPORT

**REMARKS**
[LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS]

| DRIVER'S NAME | ARRESTED / SECTION?   YES   NO | REPORTED BY | CARGO / TYPE?   YES   NO | VALUE $   BILL OF LADING ATTACHED |
|---|---|---|---|---|

Inc # 190210000285

Det. Benit
818-374-0012

FRONT     LEFT SIDE     RIGHT SIDE     REAR     TOP

| SIGNATURE OFFICER TAKING REPORT GRACEY | I.D. NO 30947 | SUPERVISOR | REQUIRED NOTICES SENT TO REGISTERED AND LEGAL OWNERS PER 22852 VC? | YES   NO | DATE NOTIFIED |
|---|---|---|---|---|---|

OSP 06 99591

c180_c06 frp

# EXHIBIT C

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

# VEHICLE REPORT

CHP 180 (Rev. 7-15) OPI 061

NOTE: CHP 180 IS FURNISHED TO ALL PEACE
OFFICERS BY THE CALIFORNIA HIGHWAY PATROL

| REPORTING DEPARTMENT | | LOCATION CODE | DATE / TIME OF REPORT | NOTICE OF STORED VEHICLE DELIVERED PERSONALLY | | FILE NO. |
|---|---|---|---|---|---|---|
| LOCATION TOWED / STOLEN FROM | | | ODOMETER READING | VIN CLEAR IN SVS?  YES  NO | DATE / TIME DISPATCH NOTIFIED | LOG NO. |
| | | | | LIC. CLEAR IN SVS?  YES  NO | | |

| YEAR | MAKE | MODEL | BODY TYPE | COLOR | LICENSE NO. | ONE  MONTH / YEAR | STATE |
|---|---|---|---|---|---|---|---|
| | | | | | | TWO | |

| VEHICLE IDENTIFICATION NO. | ENGINE NO. | VALUATION BY  OFFICER  OWNER |
|---|---|---|
| | | 0-500  501-4000  4001+  $ |

REGISTERED OWNER

SAME AS R/O          LEGAL OWNER

□ STORED      □ IMPOUNDED      □ RELEASED      □ RECOVERED - VEHICLE / COMPONENT

| TOWING / STORAGE CONCERN (NAME, ADDRESS, PHONE) | STORAGE AUTHORITY / REASON |
|---|---|

| REASON FOR STOP | AIRBAG?  YES  NO  □1  □2 | DRIVEABLE?  YES  NO  JUNK  UNK | VIN SWITCHED?  YES  NO |
|---|---|---|---|

| CONDITION | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | TIRES / WHEELS | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WRECKED | | | SEAT (FRONT) | | | REGISTRATION | | | CAMPER | | | LEFT FRONT | |
| BURNED HULK per 431(c) CVC | | | SEAT (REAR) | | | ALT. / GENERATOR | | | VESSEL AS LOAD | | | RIGHT FRONT | |
| VANDALIZED | | | RADIO | | | BATTERY | | | FIREARMS | | | LEFT REAR | |
| ENG. / TRANS. STRIP | | | TAPE DECK | | | DIFFERENTIAL | | | OTHER | | | RIGHT REAR | |
| MISC. PARTS STRIP | | | TAPES | | | TRANSMISSION | | | | | | SPARE | |
| BODY METAL STRIP | | | OTHER RADIO | | | AUTOMATIC | | | | | | HUB CAPS | |
| SURGICAL STRIP per 431(b) CVC | | | IGNITION KEY | | | MANUAL | | | | | | SPECIAL WHEELS | |

| RELEASE VEHICLE TO:  □ R/O OR AGENT  □ AGENCY HOLD  □ 22850.3 CVC | GARAGE PRINCIPAL / AGENT STORING VEHICLE (SIGNATURE) | DATE / TIME |
|---|---|---|

| NAME OF PERSON / AGENCY AUTHORIZING RELEASE | I.D. NO. | DATE | CERTIFICATION: I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I AM LEGALLY AUTHORIZED AND ENTITLED TO TAKE POSSESSION OF THE ABOVE DESCRIBED VEHICLE. |
|---|---|---|---|
| SIGNATURE OF PERSON AUTHORIZING RELEASE | | | SIGNATURE OF PERSON TAKING POSSESSION |

□ STOLEN VEHICLE / COMPONENT      □ EMBEZZLED VEHICLE      □ PLATE(S) REPORT

| DATE / TIME OF OCCURRENCE | DATE / TIME REPORTED | NAME OF REPORTING PARTY (R/P) | DRIVER LICENSE NO. / STATE |
|---|---|---|---|
| LAST DRIVER OF VEHICLE | DATE / TIME | ADDRESS OF R/P | TELEPHONE OF R/P ( ) |

| I CERTIFY OR DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT. | SIGNATURE OF PERSON MAKING REPORT |
|---|---|

## REMARKS
[LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS]

| DRIVER'S NAME | ARRESTED / SECTION?  YES  NO | REPORTED BY | CARGO / TYPE?  YES  NO | VALUE $  □ BILL OF LANDING ATTACHED |
|---|---|---|---|---|

BROKEN REAR PASSENGER WINDOW DENT ON REAR DOOR.
LOTS OF CLOTHING WELL FOLDED AND CLEAN.






FRONT          LEFT SIDE          RIGHT SIDE          REAR          TOP

| SIGNATURE OF OFFICER TAKING REPORT | I.D. NO. | SUPERVISOR | REQUIRED NOTICES SENT TO REGISTERED AND LEGAL OWNERS PER 22852 CVC?  YES  NO | DATE NOTIFIED |
|---|---|---|---|---|

An Internationally Accredited Agency

Chp180_0715.pdf

# EXHIBIT D

**GEICO**
geico.com

**GEICO Indemnity Company**

Attn: Region IV Claims, PO Box 509119
San Diego, CA 92150-9914



10/07/2019

Susie Gazazyan
39123 Dunbar St
Palmdale, CA 93551-4928

| | |
|---|---|
| Company Name: | GEICO Indemnity Company |
| Claim Number: | 051140498 0101 055 |
| Loss Date: | Sunday, February 10, 2019 |
| Policyholder: | Susie Gazazyan |



Dear Susie Gazazyan,

With respect to the theft of your 2013 Mercedes Benz GL450 that occurred on 02/10/2019, GEICO Indemnity Company hereby disclaims and/or denies any and all liability or obligation to you and to others under the policy number 4361041322 issued to you.

This disclaimer and/or denial is made because we have not been able to complete our investigation due to your failure to cooperate with our investigation. As of the date of this letter, we have not received your key fob that is needed to complete our key lock and ignition analysis, nor your complete bank records. Therefore, there is no coverage for this loss.

According to your California Family Automobile Policy Contract, Section III – Physical Damage Coverages, **Conditions** #3, it states:

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

    The *insured* will cooperate and assist us, if requested:

        (a) in the investigation of the *loss*;
        (b) in making settlements;
        (c) in the conduct of suits;
        (d) in enforcing any right of subrogation against and legally responsible person or organization;
        (e) at trials and hearings;

EC0020 (1/2007)

(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses


Sincerely,


Julie Paris
858-762-8445
Claims Department


We are required under section 2695.7(b)(3) of the Unfair Claims Settlement Practices
Regulations to provide the following notice:

If you believe that your claim has been wrongfully denied or rejected, you also have the right
to have the California Department of Insurance review this matter.  The Department of
Insurance is located at 300 South Spring Street, Los Angeles, CA 90013, telephone number
1-800-927-4357.